# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ) | |
| ) | |
| **DENNIS SOLOMON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 16-10176** |
| ) | |
| ) | |
| **PHILIP KHOURY, DOUGLAS WOLF** ) | |
| **DAVID GESNER, VINCENT LECLERC,** ) | |
| **LEIGH-ELLEN LOUIE, PEPSICO., INC.,** ) | |
| **ESKI, INC., AND DAVID PARENT,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                      **February 13, 2017**

## I.    Introduction

Plaintiff Dennis Solomon ("Solomon"), proceeding *pro se*, has filed this lawsuit against Defendants Philip Khoury, Douglas Wolf, David Gesner, Vincent LeClerc, Leigh-Ellen Louie, PepsiCo, Inc., Eski, Inc., and David Parent (the "Defendants").  Solomon filed his complaint on February 5, 2016, alleging causes of action relating to an alleged conspiracy by the Defendants to steal, among other things, trade secrets from him.  D. 1.  Specifically, Solomon asserts that various Defendants have engaged in inequitable conduct in their filing of a patent application that purportedly infringed on Plaintiff's patent (Counts I and II), commercially disparaged him (Count III), violated Section 43(a) of the Lanham Act through false advertising (Counts IV and V), intentionally interfered with his various business relations (Counts VI, VII, and VIII), and schemed

to obtain his trade secrets (Count IX).[1]  D. 1 at 8-17.  Defendants Gesner and Wolf have moved to dismiss Counts I, II, VI, VII, VIII, and IX.  D. 13.  Defendants Eski, LeClerc, and Parent moved to join Gesner and Wolf's motion to dismiss (D. 20), which the Court allowed, D. 30, and also moved to dismiss Counts III, IV and V.  For the reasons stated below, the Court ALLOWS the motions and DISMISSES the complaint pursuant to Fed. R. Civ. P.  8(a) and 12(b)(6).

## II.     Standard of Review

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Phelps v. Local 0222, No. 09-cv-11218, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quotations and citations omitted)).  If a plaintiff's complaint fails to comply with the "short and plain statement" requirement, a district court may dismiss it.  Kuehl v. Fed. Deposit Ins. Co., 8 F.3d 905, 908 (1st Cir. 1993).  "Dismissal [for noncompliance with Rule 8] is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Miranda v. United States, 105 F. App'x 280, 281 (1st Cir. 2004) (quoting Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)) (alteration in original) (internal quotation marks omitted).

Under Fed. R. Civ. P. 12(b)(6), the Court will dismiss a pleading that fails to include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly,

---

[1] Solomon has listed Count 8 two times in his complaint.  For the sake of convenience, the Court will refer to the second "Count 8" as Count 9.

550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557) (alteration in original). ). In reviewing the sufficiency of a complaint, the Court conducts a two-step, context-specific inquiry. See García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the complaint "as a whole" to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. The Court must accept the factual allegations as true. Id. Conclusory legal assertions may be disregarded. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (internal quotation marks and citation omitted).

## III. Factual Background

As can best be gleaned from the factual allegations in the complaint, which the Court must accept as true for the purposes of deciding the motions to dismiss, Solomon's claims revolve around a patent prosecuted by Solomon which concerned audience effects technology. D. 1 ¶ 38. In 2000, Solomon consulted with Defendant Wolf, an attorney, regarding the audience effects technology at issue. See id. ¶¶ 37-39. Solomon's complaint does not mention any significant event occurring between this consultation in 2000 and 2006, the year that Solomon eventually filed his patent application with the U.S. Patent Office. Id. ¶ 40. Specifically, there is no allegation that Solomon and Wolf maintained an attorney-client relationship at any point after the initial consultation in 2000 and there is no indication Wolf assisted Solomon in the eventual filing of the

application in 2006.  In 2012, the U.S. Patent Office approved Solomon's patent application, and the patent issued as U.S. Patent 8,194,188 (the "'188 patent").  Id.

As alleged, at some point between 2000 and 2013, Wolf was retained by LeClerc, the Chief Technology Officer of Eski, Inc., to assist in the filing of a separate and distinct patent application from the one filed by Solomon.  See id. ¶ 41.  In 2013, on behalf of his client, Wolf filed LeClerc's patent application with the U.S. Patent Office.  Id.  This patent application covered a data and image projector.  Id. ¶ 42.  According to Solomon's allegations, the patent application filed on behalf of LeClerc disclosed an invention identical to the invention covered by his patent, the '188 Patent.  Id.  In March 2014, Solomon sent Parent, the President of Eski, Inc., a letter informing him that LeClerc's patent application covered similar technology to the '118 patent.  Id. ¶ 45.  In response, Gesner—a different attorney at Wolf's firm—filed a Request for Continued Examination ("RCE") and an Information Disclosure Statement ("IDS") with the U.S. Patent Office, which listed many of Solomon's U.S. patents.  Id. ¶¶ 45-46.  This gave notice to the patent examiner that the '118 patent would need to be considered before the issuance of LeClerc's patent.  On April 29, 2014, the patent examiner indicated that he had considered the '118 patent in his evaluation of LeClerc's patent application, but that the '118 Patent failed to set forth what was claimed by the LeClerc patent application.  D. 15-4 at 2.  As such, in May 2014, the U.S. Patent Office allowed the claims present in LeClerc's patent application.  D. 1-6.  On June 3, 2014, LeClerc's patent issued as U.S. Patent 8,740,391.  D. 1 ¶ 47.

IV.     **Procedural History**

Solomon first filed suit against Defendants in September 2015, but the case was dismissed without prejudice after Solomon failed to pay the required administrative filing fees or, alternatively, file a motion for leave to proceed *in forma pauperis.*  Solomon v. Wolf, 15-CV-

4

13393-DJC, D. 8.  On February 5, 2016, Solomon instituted this action.  D. 1.  Defendants Gesner and Wolf have now moved to dismiss Counts I, II, VI, VII, VIII, and IX.  D. 13.  Defendants Eski, Inc., LeClerc, and Parent moved to join co-defendants motion to dismiss (D. 20) and filed their own motion to dismiss Counts III, IV, and V.  D. 21.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 30.

## V.      Discussion

### A.      The Complaint Fails to Satisfy Fed. R. Civ. P. 8(a)(2)

As the Defendants point out in their motions to dismiss, many of the allegations in the complaint appear to have nothing to do with Solomon's causes of action.  See, e.g., D. 1 ¶ 89 (alleging that the former Chief Justice of the United States, William Rehnquist, participated in "anti-Semitic Lutheran liturgy"); D. 1 ¶ 91 (alleging an organization called the "Atlantis Cartel" used an Israeli man named Al Schwimmer as a scapegoat in the Iran/Contra Scandal);  D. 1 ¶ 34 (alleging the mother of a guitarist from the band PHISH, Marge Minkin, was consulted by some of the defendants in furtherance of an unidentified "scheme" against Solomon); and D. 1 ¶ 87 (alleging that assistants to President Ronald Regan provided high quality cocaine to patrons of Studio 54, businessmen on Wall Street, visitors to the Hamptons, and members at various New England yacht clubs).   Indeed, the allegations presented by Solomon are so disjointed and disorganized that the complaint, "falls into the category of '[c]omplaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim.'"  Phelps v. Local 0222, No. 09-cv-11218-JLT, 2010 WL 3342031, at *5 (D. Mass. Aug. 20, 2010) (Report and Recommendation) (quoting Prezzi v. Berzak, 57 F.R.D. 149, 151-52 (S.D.N.Y. 1972)), adopted by, 2010 WL 3342023 (D. Mass. Aug. 25, 2010).

As a result, the complaint does not give notice to each of the defendants of the cause of action(s) asserted against them separately. See Brown v. Forensic Health Servs, Inc., 13-CV-13078-RGS, 2013 WL 6814852, at *3 (D. Mass. Dec. 23, 2013). For many of the counts asserted by Solomon, it is unclear to the Court which causes of actions apply to which Defendants. The Court, for one example, is unable to glean facts that link Defendant Gesner to any cause of action, or to decipher which facts link the remaining Defendants to the various allegations. Solomon argues that under Rule 8 "a party may state as many separate claims or defenses as it has, regardless of consistency," D. 18 at 4, but that does not excuse Solomon from "afford[ing] the defendants a 'meaningful opportunity to mount a defense.'" Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc., No. 11-CV-40126-FDS, 2011 WL 2681195, at *2, (D. Mass. July 6, 2011) (quoting Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (internal punctuation and additional citations omitted)). It would be unfair to require each of the Defendants to peruse the complaint as pled and cull out Solomon's claims for which liability would attach. See United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992). Additionally, Solomon attempts to introduce new causes of action is his opposition to motion to dismiss, while eliminating causes of action plead in his original complaint. D. 18 at 6-7. For example, Solomon for the first time in his opposition appears to allege unlawful civil conspiracy and unlawful attempt to monopolize, but eliminates his previous claims for inequitable conduct. D. 18 at 6-8. Notwithstanding that modifying causes of action in an opposition to motion to dismiss is improper, see Portfolioscope, Inc. v. I-Flex Solutions Ltd., 473 F. Supp. 2d 252, 256 (D. Mass. 2007), such proposed changes do little to unentangle the confusion regarding which present claims are asserted against which defendants.

While the "First Circuit holds a pro se litigant to a standard of pleading less stringent than that for lawyers . . . this cannot be taken to mean that pro se complaints are held to no standard at

all." Green v. Massachusetts, 108 F.R.D. 217, 218 (D. Mass. 1985). Indeed, "the requirements of Rule 8(a)(2) are minimal–but 'minimal requirements are not tantamount to nonexistent requirements.'" Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Accordingly, the Court cannot say that Solomon's 117-paragraph complaint is a "short and plain statement" that shows that Solomon is entitled to relief or which puts each defendant on notice of the claims against him as required by Rule 8.

**B.      Dismissal is Also Warranted Under Fed. R. Civ. P. 12(b)(6)**

Although the failure to satisfy Rule 8 is reason alone to dismiss the complaint, the Court now turns to the Defendants' arguments that Solomon's claims must each be dismissed for failure to state a claim under Rule 12(b)(6). The Court addresses each count in turn.

Counts I and II of the complaint allege inequitable conduct on the part of Defendants Wolf and LeClerc in their filing of a patent application with the United States Patent and Trademark Office ("USPTO"). D. 1 at 8. Specifically, Solomon claims that Wolf and LeClerc had an affirmative duty to disclose and bring to the Examiner's attention relevant information including prior art and patents, including a patent owned by Solomon (the '118 patent). Id. at 9. In light of the fact that this patent was incorporated by reference in the complaint and that the Court may otherwise take judicial notice of a patent filing, the Court's examination of the patent reveals that these defendants disclosed Solomon's '118 patent in its application. D. 15-5 at 3. Beyond the fact that the record demonstrates Defendants disclosed the '118 patent, see D. 1-8 at 5; D. 15-5 at 3, inequitable conduct is not an affirmative allegation that can be brought forth in a complaint. Rather, t "[i]nequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." Therasense, Inc. v. Becton, Dickinson and Co., 649 F.3d 1276, 1285

(Fed. Cir. 2011). As such, Solomon's assertion that Defendants engaged in inequitable conduct is an improper cause of action. Even if it were a proper cause of action, since a claim of inequitable conduct is similar to a claim of fraud, such claims must be pled with particularity under Fed. R. Civ. P. 9(b). Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1328 (Fed. Cir. 2009). Since Solomon fails to meet such heightened pleading standard here as to this claim, even if inequitable conduct were a proper cause of action, it would fail for this independent reason.

As to Count III, Solomon has not pled the requisite elements for commercial disparagement. Under Massachusetts law, a plaintiff claiming commercial disparagement must allege that the "defendant (1) published a false statement to a person other than the plaintiff; (2) 'of and concerning' the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss." HipSaver, Inc. v. Kiel, 464 Mass. 517, 523 (2013). First, Solomon has not adequately pled that the statement at issue is false. Solomon takes issue with the fact that LeClerc made statements to the "Live Design Master Class in 2014" that he was "'the inventor' of the performance audience display system." D. 1 ¶ 59. But LeClerc is listed as the inventor of the '391 Patent, again, a document of which the Court can take judicial notice, and the '391 Patent covers "a projection system, a projector, and a projection method for providing a distributed manifestation in an environment." D. 15-5 at 1, 13. Given that LeClerc is, indeed, the inventor of a performance audience display system, as evidenced by the '391 Patent, and given that Solomon has not pointed the Court to any other allegedly false statement, Solomon has not plausibly pled the first element of this cause of action.

Additionally, special damages are an "essential element of a cause of action for commercial disparagement," and Solomon has alleged no damages at all. HipSaver, 464 Mass. at 536. "To establish special damages, a plaintiff ordinarily must demonstrate that publication of the false statement resulted in 'a specific loss of sales to identified customers.'" BBJ, Inc. v. MillerCoors, LLC, No. 12-cv-11305-IT, 2015 WL 4465410, at *4 (D. Mass. July 21, 2015) (internal citation omitted). Solomon has pled no such facts. While there is an exception to this general rule where the false statement has been "widely disseminated" such that "it would be impossible to identify particular customers who chose not to purchase a plaintiff's goods or services," HipSaver, 464 Mass. at 537, Solomon has not alleged such dissemination. Accordingly, for failing to assert the essential elements of this claim, Count III is also dismissed.

Counts IV and V, false advertising claims under the Lanham Act against Eski, Inc., LeClerc, and Parent must be dismissed. To assert a false advertising claim under the Lanham Act, "a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1395 (2014). As with Count III, Solomon has not sufficiently alleged any misrepresentations in Count IV where such claim also relies upon LeClerc's representations as the inventor of the performance audience display system. To establish proximate causation, Solomon is not required to show that he was in direct commercial competition with the Defendant(s), but he nevertheless must allege that he suffered "economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 1391. Here, Solomon's complaint, as to both Counts IV and V, fails to allege what commercial interest is being harmed by the allegedly false statements uttered by the

Defendants. Significantly, the product at issue here is not clearly specified, nor does Solomon allege that the sales of this unspecified product have been harmed. Cf. Bern Unlimited, Inc. v. Burton Corp., 25 F. Supp. 3d 170, 184 (D. Mass. 2014) (recognizing that the claim was "thin, at best," the Court still found that the Lanham "counterclaims allege that plaintiff's false advertising deceived customers, which resulted in increased sales for plaintiff and decreased sales for defendants. Assuming those allegations are true, defendants suffered harm directly caused by plaintiff's false advertising"). Here, Solomon has not alleged decreased sales of anything. As such, Solomon fails to plead these claims sufficiently since his claims are "too remote" from the defendants' alleged unlawful conduct. See Lexmark, 134 S. Ct. at 1390-91.

Counts VI, VII, and VIII also fail. In each count, Solomon asserts a claim for intentional interference with business relations. Under Massachusetts law, to assert this claim, a plaintiff must allege "(1) the plaintiff has a business relationship for economic benefit with a third party, (2) the defendants knew of that relationship, (3) the defendants interfered with that relationship through improper motive or means, and (4) the plaintiff's loss of business advantage resulted directly from the defendants' conduct." Tomaselli v. Beaulieu, 967 F. Supp. 2d 423, 455-56 (D. Mass. 2013) (quoting Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 608 (2013)). Solomon, however, has not alleged the requisite elements as to this cause of action. For example, Count VI alleges that all defendants intentionally interfered with business relations Solomon maintained with Pepsi Co.. D. 1 at 11. The complaint, however, provides no facts purporting to show a relationship between Solomon and Pepsi Co. other than the fact that Solomon "sent the president of Pepsico a proposal for a performance audience display system," and that "they were considering the idea." Id. This level of conjecture cannot meet the threshold for the first element of this cause of action. Indeed, this district court has noted that, "[t]he mere

possibility that [a plaintiff's] proposal would be accepted by the permitting authority is not sufficient" to satisfy this critical element. Sherman v. Clear Channel Outdoor, Inc., 889 F. Supp. 2d 168, 177 (D. Mass. 2012). Without a valid business relationship, there can be no intentional interference with a business relationship. The same deficiencies in Count VI are similarly absent as to Counts VII and VIII and, therefore, they are also dismissed.

Count IX alleges Defendants engaged in schemes to steal his trade secrets. "To establish trade secret misappropriation under Massachusetts law, [Solomon] must show (1) that the information in question is a trade secret, (2) that [Solomon] took reasonable steps to preserve the secrecy of that information, and (3) that defendants used improper means, in breach of a confidential relationship, to acquire and use the trade secret." Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc., No. 02-CV-12102-RWZ, 2006 WL 1766434, at *8 (D. Mass. June 28, 2006) (quoting DB Riley, Inc. v. AB Eng'g Corp., 977 F. Supp. 84, 89 (D. Mass. 1997)). Solomon has not sufficiently alleged what his trade secret is or how it has been misappropriated. Defendants cannot be required to guess the trade secret Solomon is referencing. Furthermore, to the extent Solomon's trade secret claim rests upon the information claimed in the '118 Patent, that information cannot be properly protected as a trade secret. The Supreme Court has made clear that "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret." Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1002 (1984). Solomon's complaint, however, concedes that "from 2006 and thereafter, Plaintiff Solomon's Performance Audience Display system was well known at the MIT Media Lab." D. 1 ¶ 112. Additionally, by definition a patent or published patent cannot be a trade secret. Indeed, when an individual "publicly discloses the secret, his property right is extinguished." Ruckelshaus, 467 U.S. at 1002. A patentee

necessarily discloses his secret to the public at large.  Thus, trade secret law is inapplicable to the situation Solomon presents.

Under some circumstances, a Court might grant a motion to dismiss a *pro se* complaint without prejudice, and provide the *pro se* complainant leave to amend to cure identified deficiencies.  Granting Solomon leave to amend would, however, prove to be futile.  Review of the allegations in Solomon's complaint and the various exhibits attached to that complaint establishes that there are no factual bases upon which he might "state a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  In his opposition and at oral argument, Solomon referred to some additional claims he would bring against Defendants, including but not limited to seeking a declaratory judgment, D. 31 at 27-28, a civil conspiracy claim and an unfair competition claim against all Defendants.  D. 18 at 6-8 if given the chance to amend his complaint.  The Court has considered Solomon's proposed amendments and nonetheless determines that any such amendment would still fail to bring plausible claims against the Defendants.  See id. at 33; Chaing v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) (district court did not abuse its discretion by denying leave to file amended complaint, when amendment would have been futile).  In granting the motions to dismiss, the Court further recognizes that another judge within this district has been compelled to enjoin Solomon from filing additional complaints without leave of court.  See Solomon v. Texas Instruments, Inc., No. 06-CV-11307-RGS, 2007 WL 107744, at \*2 (D. Mass. Jan. 10, 2007) (noting that "because this is the third time that Texas Instruments has been forced to defend itself in this court against the same meritless claims, Dennis Solomon is hereby ENJOINED from filing any further Complaints regarding the same or related subject matter without prior leave of court").  The same warnings have been issued by at least one Massachusetts state court.  See Solomon v. Malloy, 94-CV-3617 (Middlesex Sup.

Ct. 1994), aff'd No. 03-P-1553 (Mass. App. Ct. Jan. 19, 2005) (dismissing case in favor of defendants and enjoining Solomon "from filing future pro se complaints against the named defendants, arising out of the same set of facts unless [Solomon] first obtains leave of court to proceed pro se"). Thus, while the filings of *pro se* litigants should be liberally construed, see Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997), the leniency afforded to a *pro se* party is diminished when he has significant experienced litigating like Solomon.[2] See Faust v. Cabral, No. 12-CV-11020-DJC, 2015 WL 3953185, at *3 n.4 (D. Mass. May 15, 2015).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motions to dismiss, D. 13 and D. 21, with prejudice pursuant to Rules 8(a) and 12(b)(6). Given this ruling, the other bases of the Defendants' motions to dismiss or strike are DENIED as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] See Solomon v. Univ. of S. California, 360 F. App'x 165, 166 (D.C. Cir. 2010); Solomon v. Texas Instruments, Inc., 06-cv-11307, 2007 WL 107744, at *2 (D. Mass. Jan. 10, 2007); Solomon v. Vest, 04-cv-12499 (D. Mass. 2004); Solomon v. Puritan Clothing, Inc., 00-CV-12560 (D. Mass. 2000); Solomon v. Lawless, 00-cv-12268 (D. Mass. 2000); Solomon v. Altman Stage Lighting Co., Inc., 00-CV-01732 (S.D.N.Y. 2000); Solomon v. Microvision, 98-CV-00258 (D. Mass. 1998); Solomon v. Cheney, 96-cv-11377-PBS (D. Mass. 1996); Solomon v. Altman Stage Lighting Co., 90-cv-11251 (D. Mass. 1990); Solomon v. Atlantis Dev., Inc., 516 A.2d 132 (Vt. 1986); Solomon v. Lawless, 01-cv-00721 (Mass. Super. Ct. Jan. 6, 2003); Solomon v. Raytheon, Inc., 9772-CV-00452 (Mass. Super. Ct. 1997); Solomon v. Malloy, 94-CV-3617 (Mass. Super. Ct. Oct. 5, 1994); Solomon v. Atlantis Dev., Inc. 88-CV-00224 (Mass. Super. Ct. July 7, 1989).